UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAUREN GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:10-CV-460 JD |
| | ) |
| MORRISON MANAGEMENT SPECIALISTS, INC., | ) ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

In this employment discrimination case, the Court is asked to consider the effect of the plaintiff's failure to verify her administrative charge, as is required by statute, *see* 42 U.S.C. § 2000e-5(b), on her ability to maintain an action in court thereafter. The Court is also asked to determine whether the defendant waived any argument based on the verification requirement by failing to include it as an affirmative defense in the Answer. In short, the Court finds that the defense was not waived, and that it is meritorious. The plaintiff's case is dismissed without prejudice.

## **BACKGROUND**[1]

Lauren Gray ("Gray") took a job working as a sous-chef[2] for Morrison Management Specialists, Inc., ("Morrison") on October 11, 2009. [DE 35 ¶ 2]. Her duty station was at Morrison's

---

[1] The record is cited in the following format: ["Docket Entry Number" at "page or ¶ number within docket entry"]. No internal line numbers will be referenced.

[2] According to Wikipedia, "The *Sous-Chef de Cuisine* (under-chef of the kitchen) is the second in command and direct assistant of the Chef." http://en.wikipedia.org/wiki/Chef (accessed August 15, 2012) (emphasis original).

1

St. Joseph's Hospital facility, located in Fort Wayne, Indiana. [DE 35 ¶ 3]. In Spring of 2010, Gray informed her supervisor that she was pregnant and due to deliver in June. Her supervisor – Francine Sizemore – initially promised that Morrison would grant Gray appropriate leave time, but as Gray's due date approached, she began to suspect the contrary. [DE 35 ¶ 4]. On May 27, 2010, eighteen days before Gray was scheduled to take leave, Sizemore called Gray into her office and terminated her. [DE 35 ¶ 5]. Sizemore claimed Gray had violated company policy by licking a spatula while on duty and reusing it; Gray admits to licking the spatula in question, but claims she transported it to the area designated for washing and sanitizing thereafter. Sizemore showed Gray a video clip of the incident, but the tape cut off prior to the moment when Gray claims she set the spatula aside for sanitization. [DE 35 ¶ 5-8]. Gray immediately believed that the "spatula incident" was a cover, and that she was actually terminated due to her pregnancy and the impending leave time that came with it. [DE 35 ¶ 9].

Gray researched how to file a discrimination claim, and on May 28, 2010, she printed, completed, and mailed an intake questionnaire she found on a website maintained by the United States Equal Employment Opportunity Commission (EEOC). [DE 35 ¶ 9-11]. In it, she claimed that Morrison unlawfully terminated her because of her sex and because of her pregnancy. [DE 22-1 at 5-9]. Gray signed and dated the questionnaire, but the form did not indicate that her signature was an oath or affirmation, or that it subjected her to penalties for perjury if her allegations were untrue. [DE 22-1 at 5-9]. On June 1, 2010, Gray contacted an attorney, R. Mark Keaton, to discuss her potential case. Keaton informed Gray in general terms that the next step of the process would require the preparation and submission of a formal charge of discrimination, executed under oath. Gray was amenable to proceeding with her suit, and eventually retained Keaton.

2

On or around June 10, 2010, Gray received a telephone call from an EEOC representative. [DE 35 ¶ 15]. The representative asked if she was still interested in filing a charge of discrimination, and Gray made clear that she wanted to go forward. The same day, the EEOC representative mailed Gray a completed formal charge of discrimination. [DE 22-1 at 13-15]. It came with a letter instructing Gray to sign and date the form and to return the signed form to the EEOC. [DE 22-1 at 13]. The letter also informed Gray:

> Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court.

[DE 22-1 at 13]. Gray brought the form to Keaton, and he told her to execute it and return it to him for filing with the EEOC. [DE 35 ¶ 20]. Gray did eventually execute the form before a notary public, but neither she nor Keaton ever returned it to the EEOC. [DE 35 ¶ 21; DE 36 ¶ 15]. On August 10, 2010, the EEOC dismissed Gray's charge and issued a right to sue notice. [DE 35 ¶ 22; DE 36 ¶ 17]. At no point during the EEOC's handling of the charge was Morrison provided with any documents or ordered to respond in any way; the EEOC notified Morrison that a charge had been filed, but indicated that no action was necessary. [DE 22-2 at 5].

On November 9, 2010, Gray filed a complaint in state court alleging pregnancy and sex discrimination, violations of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act. [DE 1]. In it, Gray (through Keaton) stated:

> On or about June 28, 2010, and within 300 days or the discriminatory conduct of which gray complains, Gray filed a charge of discrimination with the [EEOC], which charge was lodged against [Morrison]. (A copy of Gray's June 28, 2010 Charge of Discrimination is attached hereto as Exhibit A).

3

[DE 1 ¶ 5]. Those statements were materially false. Gray never filed anything on June 28, 2010. That is the date she executed the formal charge of discrimination before a notary public, but that formal charge was never returned to the EEOC. The document which was attached to the Complaint as "Exhibit A" was a copy of that notarized, formal charge – the one which had never been filed. No copy of the intake questionnaire which had *actually* precipitated the EEOC investigation was attached to the Complaint, and nothing about the Complaint itself could have put the defendant on notice that the statements regarding the attached charge were false. Fortunately, sometime around January 18, 2011, Keaton realized that the Complaint was materially inaccurate and contacted counsel for Morrison to discuss the issue. [DE 36 ¶ 24-26]. As of that date, counsel for Morrison was aware that the documents actually filed with the EEOC were different from the document attached to the Complaint, but neither party was able to obtain copies of the actual documents for several more months. [DE 44 at 6, 10].

Morrison removed the case to federal court on December 22, 2010, invoking federal question jurisdiction, and on January 25, 2010, Morrison filed an Answer. [DE 11]. The Answer contained seven affirmative defenses, but it did not mention any failure on Gray's part to meet the statutory prerequisites to filing a Title VII suit. Shortly thereafter, at the Rule 16 conference, Keaton expressed concern that the Court's subject matter jurisdiction could be an issue; he wanted to verify with the EEOC that the intake questionnaire served as a "charge" filed within the statutory limitations period, as is necessary before a plaintiff may take her discrimination case to the federal courts. [DE 13]. The EEOC informed Keaton that Gray's charge of discrimination was indeed considered filed when the intake questionnaire was received, consistent with *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), even though no "formal" charge of discrimination had ever been

submitted. He reported on the issue at a status conference held before Magistrate Judge Roger Cosbey on March 24, 2011. [DE 17]. There, the parties and the Court agreed that subject matter jurisdiction was not currently an issue, and that if it eventually became one, it could be dealt with when it did. [DE 44 at 11-12]. As of the status conference, both parties had yet to lay eyes on the document Gray actually filed with the EEOC. [DE 44 at 6, 10].

The next substantive action in the case occurred when Morrison filed a motion for summary judgment, on October 17, 2011. [DE 20]. Morrison finally obtained a copy of Gray's intake questionnaire – which was the only "charge" she ever filed with the EEOC – around the time of the status conference, and realized it was not verified. Title VII requires that "[c]harges shall be in writing under oath or affirmation," 42 U.S.C. § 2000e-5(b), and Morrison moved for summary judgment on the grounds that Gray failed to meet that statutory prerequisite. Gray responded with a flurry of activity; on November 29, 2011, she moved to strike Morrison's motion for summary judgment [DE 32], and she cross-moved for summary judgment the same day. [DE 33]. The parties briefed out the motions, and the Court now disposes of them as follows.

**DISCUSSION**

There are three ripe motions before the Court. First, Morrison moved for summary judgment. [DE 20]. Morrison argues that Gray failed to meet the verification requirement – a statutory prerequisite to the filing of a Title VII suit – and that the case should therefore be dismissed. Second, Gray moved to strike that motion. [DE 32]. She argues that a verification requirement argument is an affirmative defense. As such, Morrison should have included it in the Answer, and Morrison's failure to do so amounts to a waiver. Finally, Gray cross-moved for summary judgment on the merits, in the event that the motion to strike is denied. [DE 33].

Proceeding according to dispositive priority, the Court begins with Gray's motion to strike, and finds that, on the facts of this particular case, Morrison did not waive the verification requirement defense by failing to include the defense in its Answer. As a result, the motion to strike is denied. Next, the Court proceeds to considering Morrison's motion for summary judgment. Viewing the facts in the light most favorable to the plaintiff – but cognizant that nearly all of the material facts are undisputed – the Court finds that the defendant is entitled to summary judgment and the case should be dismissed. Morrison's motion for summary judgment is therefore granted, and Gray's cross-motion for summary judgment is denied as moot.

## I. Motion to Strike [DE 32]

We begin by addressing Gray's motion to strike. In its motion for summary judgment, Morrison raised for the first time an argument that Gray failed to meet the "oath or affirmation" requirement with respect to her EEOC charge of discrimination. *See* 42 U.S.C. § 2000e-5(b). Gray moved to strike the motion for summary judgment, characterizing Morrison's argument as an affirmative defense which was waived by virtue of Morrison's failure to include it in the Answer. Gray is correct that failure to meet a statutory prerequisite to the filing of an action is an affirmative defense. *See, e.g., Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007); *Hardiman v, LaPorte Reg'l Health Sys.*, No. 3:10-CV-327, 2010 WL 5135915 at *2 (N.D. Ind. Dec. 10, 2010); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F.Supp.2d 1043, 1057 (E.D. Wis. Sept. 29, 2010). Federal Rule of Civil Procedure 8(c) requires that a defendant, in a responsive pleading, raise all affirmative defenses that will defeat the allegations in the complaint. *See* Fed.R.Civ.P. 8(c); *Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004). The purpose of this Rule is to "avoid surprise and undue prejudice to the plaintiff by providing her notice" and an opportunity to respond.

6

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971); *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir. 1991); *see also Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st Cir. 1995); *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir. 1992); *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989); *Perez v. United States*, 830 F.2d 54, 57 (5th Cir. 1987).

If a defendant does not raise a defense at the time of filing an answer, the defense is usually deemed waived. *Castro*, 350 F.3d at 735; *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990); *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981). But compliance with the rule is not always possible, such as when the facts constituting an affirmative defense do not become known to the defendant until after an answer is filed. In such cases, "[o]nce the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense."*Venters*, 123 F.3d at 967. While the appropriate thing for the defendant to do is to promptly seek leave to amend his answer, *see DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987), an affirmative defense "can be asserted even in a motion for summary judgment if the plaintiff is not harmed by the delay[.]" *Phillips v. Walker*, 443 Fed. Appx. 213, 215 (7th Cir. 2011) (citing *Hess v. Reg–Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729–30 (7th Cir. 2007); *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2006)). More specifically, "a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (citing *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000); *Block v. First Blood*

*Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 351 (7th Cir. 1992). The decision whether to allow a defendant to raise an affirmative defense for the first time on summary judgment – which involves, implicitly, a request to amend the Answer – is a discretionary one. *See Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005).

It is undisputed that Morrison's Answer, filed on January 5, 2011, did not list Gray's failure to satisfy the verification requirement as an affirmative defense. [DE 11]. But it would have been impossible for Morrison to do so. Gray did not attach *any* document to her Complaint which was actually filed with the EEOC. While Gray's Complaint states that "[o]n or about June 28, 2010 . . . Gray filed a charge of discrimination[,]" and that "[a] copy of Gray's June 28, 2010, Charge of Discrimination is attached[,]" [DE 1 ¶ 5], the attached document is simply the form prepared by the EEOC and mailed to Gray along with a request for her verification. Gray did verify that document before a notary public, but she never returned it to the EEOC. For the purposes of an inquiry into whether a verified charge was submitted to the EEOC, the document is irrelevant. The statements the plaintiff made about it in the Complaint are misrepresentations, although it is undisputed that they were made accidentally. In any event, the Complaint clearly could not have given notice to Morrison that the verification requirement would be an issue. To the contrary, the Complaint made it seem (inaccurately) as though the attached, verified form *was* filed, and even gave a specific (inaccurate) date of filing.

As mentioned, Keaton did eventually realize his mistake, and he shared it with counsel for Morrison sometime around January 18, 2011. At that point – the first time counsel for Morrison could have learned indirectly of any problem with Gray's EEOC filings – the Answer had not yet been filed. But, while Keaton did make it clear that the document attached to the Complaint was not

the real charge of discrimination, neither party had copies of the documents which actually had been submitted. As a result, Morrison still had no way of determining whether the charge that was actually filed with the EEOC met the statutory requirements.

It took some time to acquire that document. At a status conference held before Magistrate Judge Cosbey on March 24, 2011 [DE 17], counsel for Gray represented that neither party had been able to obtain copies of Gray's EEOC filings and correspondence. In particular, he claimed that neither party had seen Gray's intake questionnaire, the document which the EEOC considered to be a charge and which had triggered its investigation. [DE 44 at 6]. Counsel for Morrison confirmed that they had been unable to review the questionnaire. [DE 44 at 10]. As a result, Morrison could not know whether the charge document contained an oath or affirmation. Given that counsel for Morrison had not seen a copy of the charging document prior to March 24, 2011,[3] Morrison would have had to engage in pure guesswork, or an act of clairvoyance, to anticipate the defect in the document and raise it in the Answer, filed on January 25, 2011, or on the record at the status conference. Given the rules prohibiting an attorney from raising a frivolous or factually unsupported affirmative defense, *see, e.g.*, Fed. R. Civ. P. 11(b), it is understandable that Morrison wanted to take the reasonable step of actually viewing the charge document before claiming – or waiving a claim – that it was defective. Morrison's failure to do so before filing the Answer was due to the plaintiff's

---

[3] The exact date on which Morrison did obtain a copy of the relevant documents from the EEOC is unclear. One affidavit indicates that the EEOC "produced" the documents on March 22, 2011. [DE 22-1]. But as of March 24, 2011, both parties plainly indicated they had yet to receive the documents. Nothing in the record reconciles this potential conflict in the evidence, but it makes no appreciable difference in the Court's analysis. The most likely explanation is that the documents were mailed on the 22nd and received some time thereafter. The Court has no duty, while addressing only the motion to strike, and not the motions for summary judgment, to view such evidentiary conflicts in either party's favor.

9

initial misrepresentations, apparently unintended, and to the EEOC's delay in responding to a FOIA request; the Court will not punish Morrison for that.

Gray also argues, however, that the defense was waived as a result of Morrison's failure to amend the Answer between the status conference and its motion for summary judgment. Although it appears that Morrison did receive a copy of the relevant documents from the EEOC close to the time of the status conference [DE 22-1], the motion for summary judgment based thereon was not filed until October 17, 2011. Gray argues that the seven-month delay between having the ability, at least, to discover the defense and actually raising it should preclude Morrison from raising it now. Had the verification issue been raised sooner, Gray insists she would have been able to rectify it with the EEOC. Because Morrison did not raise the defense until the 300-day filing period with the EEOC had expired, however, Gray argues she was unduly prejudiced by the delay. *See Franklin Covey Co.*, 316 F.3d at 350.

There are two problems with Gray's argument. First, it is not as though Morrison discovered that the verification requirement defense was available months before the EEOC filing period expired, and then waited the clock out specifically to prevent Gray from remedying her error. Gray had 300 days from May 27, 2010, in which to file with the EEOC. That period of time ended on March 23, 2011, one day before Magistrate Judge Cosbey conducted the last hearing on the matter. At that hearing, both plaintiff's counsel and counsel for Morrison indicated they had not yet seen the intake questionnaire which served as a charge of discrimination in this case. The 300-day filing period thus expired *before* Morrison knew or could have known that a verification defense might be available. Thereafter, whether Morrison raised the issue immediately upon discovering it or not, Gray was going to have to deal with it from a standpoint outside of the 300-day window. In short,

even if Gray was prejudiced by the verification requirement defense arising for the first time outside of the 300-day window, it was due to the difficulty the parties faced in trying to acquire documents from the EEOC. It was no fault of Morrison's, and should not preclude Morrison from arguing its case.

Second, Gray's argument that she could have corrected her error through the EEOC if Morrison had raised it during the filing period is irrelevant, given the above, and simply in error. Discussing the information he conveyed to defense counsel in their January, 2011, phone conversation, plaintiff's counsel states:

> I believed the issue was potentially, at that stage of the proceedings, less pressing than it might appear for the simple reason that, as of the date of our conference (mid-January 2011), less than 300 days had elapsed since Gray's termination, and that if there was any bona fide factual dispute as to whether Gray had indeed filed a charge of discrimination with the EEOC, Gray was still in a position where she could voluntarily dismiss the pending action and file a charge.

[DE 36 ¶ 28]. What plaintiff's counsel mistakenly *believed* in January of 2011 has no bearing whatsoever on whether Gray was *actually* prejudiced by Morrison's delay in raising the verification requirement defense. The EEOC would not, in fact, have allowed Gray to re-file a new, verified charge after it had already closed the file on her initial charge and issued a right to sue letter. Plaintiff's counsel changed his belief sometime between that conversation and the status conference on March 24, 2011, where he told Magistrate Judge Cosbey:

> I asked [the intake person at the EEOC] whether I could cure any potential problems by submitting the executed charge, and she told me no, because since they deemed it open, and then closed it, we could not file a charge. They would have to treat it as a new charge and we couldn't [file] a new charge on the old facts.

[DE 44 at 6].

The latter representation is the legally correct one. While Gray rightly points out that the

EEOC has promulgated a regulation allowing that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge," *see* 29 C.F.R. § 1601.12(b), the right to amend has traditionally been understand to apply only while the charge is actually pending before the EEOC. As the Fourth Circuit Court of Appeals concluded when faced with this exact issue,

> [A] reasonable construction of the EEOC's regulation would simply allow charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files, but that where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there is no longer a charge pending before the EEOC which is capable of being amended. This construction of the regulation imparts certainty to the proceeding which is helpful to the parties and the court, and at the same time it complies with the statutory requirement of verification without undermining the EEOC regulation.

*Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994). The Supreme Court essentially endorsed this approach in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), where it concluded that the verification requirement need not be met at the moment the employee files with the EEOC, but does need to be met by the time the employer is obligated to respond to the charge. *Id.* at 113. In other words, Gray's argument that she was prejudiced by Morrison's failure to raise the verification issue within the EEOC filing period is baseless. She has produced no factual evidence or legal authority as to why that would be the case, resting her case instead on her attorney's unsupported theory. Unfortunately, that guess is contradicted by the EEOC's statement to her attorney and by relevant case law. Gray could not have amended her charge once the EEOC issued a right to sue letter, whether Morrison had raised the issue within the filing period or not. No prejudice results from Morrison's delay that was not already intrinsic to the circumstances.

Beyond the unpersuasive "filing period" argument, Gray offers no reason why allowing Morrison to raise the oath or affirmation requirement defense would result in undue prejudice to the plaintiff. She also does not argue that it is the result of bad faith or dilatory motive on the part of the

12

defendant, that it is futile, or that it will result in undue delay of the proceedings. *See Franklin Covey Co.*, 316 F.3d at 350. She could not successfully do so, if she tried. The fact of the matter is that Morrison had a perfectly good reason for failing to immediately raise the affirmative defense of Gray's failure to meet the verification requirement. It had no idea the defense might be available until it was able to view the document the EEOC treated as a charge, and that did not happen until some time after the Answer was filed. That makes this case different from *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348 (7th Cir. 1992), cited by the plaintiff for support. In *Daugherity*, the defendant waited well over three years to move to amend its answer to include a failure-to-exhaust defense, and the only reason the defendant offered for the delay was that it left the case file in a drawer for most of that time. The Court of Appeals, naturally, found that insufficient. But it also noted that when a party seeks to amend a pleading, as Morrison implicitly does here, leave to amend should generally be freely given. *Id.* at 351. The delay in this case was only several months, and it was not due to any bad faith or carelessness on the part of Morrison. Furthermore, once the documents were made available, they were available to both parties. It is not as though, by raising the defense late, Morrison forced Gray to answer to an argument without sufficient time for factual investigation or discovery. All Gray had to do to investigate the facts supporting Morrison's motion was look at her own copy of the EEOC questionnaire. There is no prejudice here that results specifically from Morrison's delay. The plaintiff's motion to strike is denied, and the Court proceeds to considering the merits of the issue.

## II. Motions for Summary Judgment [DE 20; DE 33]

Having decided that Morrison should be permitted to raise the verification requirement defense, the Court must now address the parties' cross-motions for summary judgment. The Court

13

addresses Morrison's motion for summary judgment first. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A material fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences her favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). Since the Court is considering Morrison's motion for summary judgment first, the non-movant is the plaintiff. The fact that the parties have cross-filed for summary judgment does not change the standard of review; the Court will simply consider each motion sequentially and accord the proper factual deference to the non-movant with respect to each. *See McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008); *M.O. v. Indiana Dep't of Educ.*, 635 F.Supp.2d 847, 850 (N.D. Ind. 2009). In any case, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings. It must present sufficient evidence to

show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Furthermore, the non-moving party may rely only on admissible evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

Morrison argues that Gray's Title VII claim must be dismissed because the charge she filed with the EEOC failed to meet statutory requirements. According to the statute, any Title VII lawsuit must be preceded by the filing of a charge of discrimination with the EEOC or with a state regulatory agency with parallel enforcement powers. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009); 42 U.S.C. § 2000e-5(e)(1). The statute further requires that "[c]harges shall be in writing under oath or affirmation[.]" 42 U.S.C. § 2000e-5(b). The verification requirement "is meant to provide some degree of insurance against catchpenny claims of disgruntled, but not necessarily aggrieved, employees." *Edelman*, 535 U.S. at 115. It has the "object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Id*. at 113. In order for that object to be furthered, a prospective plaintiff must satisfy the requirement by the time the employer is required to respond to the charge. *Id*.

With respect to the verification issue, the relevant facts are undisputed. Gray filed an intake questionnaire alleging sex discrimination with the EEOC on May 28, 2010, and that intake questionnaire was not verified, meaning Gray did not execute it subject to penalties for perjury. [DE 22-1 at 5-9]. Sometime around June 10, 2010, an EEOC representative telephoned Gray to ask whether she wanted to proceed with her charge of discrimination. Gray indicated that she did. A few days later, Gray received a completed charge of discrimination from the EEOC, along with

15

instructions for Gray to execute the form under oath and return it to the commission. [DE 22-1 at 13-15; DE 36 ¶ 16].[4] It is undisputed that Gray never returned the EEOC form she had been instructed at least once to verify and return. On August 10, 2010, the EEOC closed Gray's file and mailed her a right to sue letter. [DE 22-2 at 9].

Most courts, when confronted with similar facts, have found it to be a simple affair: the verification requirement is a statutory prerequisite, and failure to meet it means the suit may not proceed. In *Vason v. City of Montgomery, Ala.*, 240 F.3d 905 (11th Cir. 2001), for example, the Eleventh Circuit Court of Appeals found that "the verification requirement for EEOC charges is mandatory[,]" and that summary judgment was warranted against a plaintiff who failed to meet that requirement, even though the EEOC had failed to inform the plaintiff that there was a problem with her charge, processed the unverified charge anyway, and issued a right to sue letter. Several other courts have reached similar conclusions. *See, e.g., Danley v. Book-of-the-Month Club, Inc.*, 107 F.3d 861 (3d Cir. 1997) (summarily affirming a district court's decision that, while plaintiff was free to verify EEOC charge while it was pending before the commission, failure to do so meant case must be dismissed); *Balazs v. Liebenthal*, 32 F.3d 151 (4th Cir. 1994); *EEOC v. Appalachian Power Co., Inc.*, 568 F.2d 354 (4th Cir. 1978) ("We have previously held the [verification requirement] to be mandatory . . . and see no reason to ignore the plain language that Congress has enacted."); *Bacon v. Allstate Ins. Co.*, No. 93-C-1701, 1995 WL 360739 (N.D. Ill. June 14, 1995).

To be sure, a plaintiff is entitled, pursuant to 29 C.F.R. § 1601.12(b), to amend her charge to satisfy the verification requirement at any time while the charge is still pending before the

---

[4] It appears that the EEOC mailed another letter to Gray on July 7, 2010, reminding her that she needed to return the verified form [DE 22-1 at 17], but Gray claims she never saw that document. The Court credits her version of the facts as non-movant.

commission. *See Philbin v. Gen. Elec. Capital Auto Lease, Inc.*, 929 F.2d 321 (7th Cir. 1991). And there is a general consensus that the verification requirement is not a *jurisdictional* prerequisite for suit, such that a plaintiff's failure to comply divests the federal court entirely of its ability to hear the case. *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 262 (3d Cir. 2006) (collecting authorities). In *Buck*, the Third Circuit Court of Appeals – in an opinion considered "unusual" by the secondary sources, *see, e.g.*, 2 Emp. Discrim. Coord. § 72:30 – went so far as to find that equity compelled the conclusion that an employer waived the verification requirement defense by failing to raise it until after it responded to the EEOC investigation on the merits. *Id.* But the court also stated "[o]ur decision in this case is premised on the fact that the School District had adequate information, *i.e.*, a copy of the detailed but unverified charge, on which to raise the issue before the EEOC." This case is different: the defendant never saw the intake questionnaire, which operated as the charging document, until the lawsuit was well underway, and was initially misled by the purported EEOC charge attached to the Complaint. Furthermore, the plaintiff never amended her charge while the charge was still pending before the EEOC, and the Court has already concluded that there is no basis for finding that Morrison waived the verification defense. In those respects, this case is more like *Balazs* and *Vason*. In each, the plaintiff failed to correct his or her mistake before the EEOC issued a right to sue letter and the court found that the case must be dismissed. The same result is warranted here, and Gray's action must be dismissed for her failure to comply with statutory prerequisites.

At the same time, the Court is sensitive to Gray's situation. While confusion and miscommunication between Gray, her attorney, and the EEOC provide no compelling basis for an equitable finding in her favor – especially in an area where the Supreme Court has made clear that public policy weighs in favor of protecting defendants, *see Edelman*, 535 U.S. at 113, 115 – they

do render her cause more sympathetic. The just resolution of the issue is to dismiss the case without prejudice.[5] That way, if Gray is for some reason able to overcome, administratively, the general rule against retroactive amendment of an EEOC charge following the issuance of a right to sue letter, she may bring her case again without suffering any preclusive effects. Because the Court, viewing the facts in the light most favorable to the plaintiff, finds that the defendant's motion for summary judgment should be granted and the case dismissed, there is no need to address the plaintiff's cross-motion for summary judgment, and it will be denied as moot.

## CONCLUSION

In conclusion, the plaintiff's motion to strike [DE 32] is **DENIED**. The defendant's motion for summary judgment [DE 20] is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**, and the plaintiff's motion for summary judgment [DE 33] is **DENIED AS MOOT**.

SO ORDERED.

ENTERED:   September 7, 2012

                                                /s/ JON E. DEGUILIO
                                               Judge
                                               United States District Court

---

[5] Granting a defendant's motion for summary judgment by way of a dismissal without prejudice is a common resolution in the procedural exhaustion context. *See, e.g., Vazquez v. Navistar Intern. Transp.*, 2012 WL 1095223 at *11 (N.D. Ind. March 30, 2012); *Smith v. Wilson*, 2008 WL 4185944 (N.D. Ind. Sept. 9, 2008); *Zook v. Ruiz*, 2007 WL 4147860 (S.D. Ind. Nov. 19, 2007); *Campana v. Vincent*, 2012 WL 516012 (S.D. Ind. Feb. 15, 2012). It ensures that the plaintiff's case is not prejudiced if the plaintiff is later able to remedy his or her error administratively.